(129 So. 475)

## LEVERT v. STATE.
### 6 Div. 647.

Supreme Court of Alabama.
June 26, 1930.

Windham & Countryman, of Birmingham, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

SAYRE, J.

Appellant was convicted of the crime of robbery and sentenced to suffer death. Code, § 5460.

Jonas Williams, a witness for the state, testified that he was near at hand, on the sidewalk, on the occasion when, as the state contended, four negroes invaded the store of Vincent Virgo, with force and arms, shot the proprietor and robbed his cash drawer. Virgo identified appellant as one of the four, and testified that he was the first of the invading party to shoot. Williams testified that he heard the shooting and thereafter saw four men come out of Virgo's store, of whom he knew and named three. As to this, appellant witness said: "I didn't know Andrew Levert before that time." This witness' identification of appellant at this point was allowed to rest upon the quoted statement.

▮▮▮ Appellant, testifying, said: "I do not know Jonas Williams. I have seen him up here in court. I don't remember seeing him down in jail since he testified in C. D. Levert's trial." The state's solicitor, by way of discrediting appellant's testimony, was permitted to ask him if he and others in jail after the trial of C. D. Levert had not "beat up" Jonas Williams, who was in the same. place at the same time. If this was error, it was harmless in itself for the reason that appellant's answer was in the negative. But afterwards the state was allowed to show by the warden at the jail that' the witness Jonas Williams had been in jail for two or three hours after the trial of C. D. Levert, and when he came out, he, the warden, noticed bruises on his head and face, but did not know how or when he got them, appellant reserving exceptions all along. Jonas Williams, recalled by the state, testified that somebody knocked him down and "about twenty of them darkies grabbed me and put my hands behind me," but that he could not see whether appellant did anything or not. This last statement, as we understand the record, was excluded, as was the statement of the witness Williams that appellant was there in jail and in the crowd. The net result, however, shows error. The jury were allowed to infer appellant's responsibility for the mistreatment of the witness Williams, whereas there was no evidence to the effect that he had joined in that wrong. Nor did the fact that appellant and one Clyde Jackson "came out together"—whatever that may mean—and asked the warden to send a note to Mr. Metz—perhaps the jury knew that Mr. Metz was a lawyer in Birmingham—"that a negro in jail had sworn a lie in the trial of C. D. Levert's case"—nor did this evidence help the case; did not legitimately tend to

show that appellant had joined in mistreating the witness Williams. It may, however, have had a highly prejudicial effect upon the minds of the jury, and the opinion here is that nothing that occurred at the jail, in the shape disclosed by the present record, should have been permitted to go to the jury. A different conclusion would be reached if it had been made to appear that this defendant participated in any maltreatment of the witness Williams.

Reversed and remanded.

All the Justices concur.